All right, our fourth case for this morning is United States v. Rontrell Turnipseed, number 21-1470, and we will hear first from Mr. Bolotin. Sorry, Your Honors, I forgot to unmute myself. Good morning and may it please the court. My name is Adam Bolotin and I will be presenting the oral argument on behalf of Rontrell Turnipseed. Today we are asking Your Honors to reverse the District Court's sentencing findings and remand for a new sentencing for three reasons. First, the District Court erred in finding that Mr. Turnipseed was not the minor participant. Second, the District Court incorrectly calculated Mr. Turnipseed's base guideline by finding that the offense included an attempt murder as opposed to an aggravated assault. And third, the ultimate sentence is substantially unreasonable as it relies on a wholly irrational 3553 analysis, beginning first with the minor participant issue. Did you say wholly irrational? Yes, Your Honor. That's a remarkable assertion given this transcript, but go ahead. Your Honor, I will certainly address those concerns, but I believe, as the record reflects, that it is not a supported, supportable 3553 analysis. But when we look at the minor participant issue, when weighing the appropriateness of a minor participant reduction, the Court's focus must be on Mr. Turnipseed's role in the relation to the entire RICO enterprise, rather than the underlying predicates, as the government argued in their provision. But can I say, Mr. Bolotin, the Court does do that, I think. He remarks during Turnipseed's sentencing, kind of there are shooters and murderers, and then there are simple street dealers. And he's made the finding of fact that Mr. Turnipseed is not in the simple street dealer category. He is in the middle category, of whom probably there are many, but that's enough, is it not, to say that he wasn't a minor participant. His role is at this intermediate level. Your Honor, I think that if you, if the Court looks at the record as to what the middle ground would be, the enterprise started in the mid-90s, and it continued until 2017. I know there's a durational argument that you're making, but I'm not sure that the Court is required to find somebody, a minor participant, who plays a significant role, but for only, you know, 10% of the time that the enterprise was underway. So focusing on the acts that Mr. Turnipseed committed during that short period, if you compare a shooting, although the shooting is, of course, reprehensible and serious, but the fact of the matter is the middle ground, the middle four-corner hustler in this case, committed multiple shootings, committed multiple murders, committed multiple aggravated assaults, committed multiple acts of extortion. And when the government points to Mr. Sims, who's not simply just a low level street dealer, but in his plea agreement, it outlined that he stored large amounts of narcotics in his home, storage guns in the home, and dealt in large amounts of narcotics. So when you compare Mr. Turnipseed's actions during the entire course of the conspiracy and how they compare to other members of the four-corner hustlers, it shows that he is actually less culpable than the average person that served in that. He's supposed to be substantially less culpable, and I'm just not sure. I mean, these are always tricky because there is obviously a spectrum of culpability, but the district court finds that the kinds of things he was doing, going around armed all the time, and it wasn't just these three incidents, there's testimony that he was a significant actor. We're on clear error review here, aren't we? I agree that the standard is in the government's favor, but I think that when looking at, as the case law requires, when you take the amount of acts that Mr. Turnipseed committed, comparing them during the entire course of the conspiracy, which again, for more than half of it, he's under the age of 10, I think that would be a significant step forward in the district court's finding. And I'd like to now turn to the attempted murder versus aggravated assault basis. When the district court concluded that the offense consisted and included an attempt murder rather than an aggravated assault, the district court outlined the facts as this. That Mr. Turnipseed got into an argument with a rival drug dealer, then pulled out a gun, and then shot the person that he was arguing with. The government seems to have shifted its position quite a bit on this point, because you get the impression, looking at the trial record, that it's the attempted murder of Shields that they're worried about, but on appeal, they're focusing exclusively on Davis, the rival drug dealer, and I wonder if that makes any difference. Your Honor, it's difficult because I think that the case law shows, and the definition of murder under 18 U.S.C. 1111, shows that when you're acting and you're trying to commit one felony, and that when you fire, in this case, fire a gun, and it actually hits another person, that you can then take the intent. Right, the transfer of intent, doctor, sure. Exactly, Judge. So I don't believe, unfortunately, for my position, that it matters one way or the other. But I think that what's important is looking at whether there was malice of forethought and an intent to kill, because under these facts, and timing is important, the shooting happened during an argument, not after an argument, and the shooting was spurred for the basis to try to convince a rival gang member not to sell narcotics on that, in that corner, on that corner. So you don't have a deliberate pre-planned effort based on the record, and you also don't have an intent to kill, because again, the intent is not to end somebody's life, but is designed to move them off the corner. Aren't there cases, though, that discuss how long, you don't have to sit there for a day and plan to kill somebody. It can be pretty short, and I think the government's arguing that as this dispute heats up, by the time he's pulled his gun out and he's pointing it, he has developed an intent to kill. Your Honor, I think that if you look at the cases that we cited in our brief, they are comparable, and they are applying the aggravated assault guidelines, and you look at... It's clear that there are cases that could have supported a use of aggravated assault, but the district judge also directed counsel's attention to a number of cases that used attempted murder guidelines in similar circumstances, and I'm a little... I think you said in your brief, Mr. Borden, that the judge decided this issue based on his gut instinct. I find that a little tough to reconcile, for example, with the statement in the transcript. I'm going to give my courtroom deputy the opportunity to email the sites we have for various cases to you, and I'm going to ask the parties to look those over. This is something that Judge Durkan seems to have studied pretty carefully. Why is it... I'm not disputing that there are cases that support your position, but I'm not persuaded yet that there is a lack of support for the district judge's view. Well, Your Honor, I think that where I read the record and where I focus on is the overall and the conclusion that he issued and the facts that he cited, and that was on page 56 of the transcript, and he cited them that he engaged in a clear thought process and therefore did not act recklessly, and therefore it's attempt murder, and that's on page 56 of the transcript. Um, so when I think that when you look at the conclusion, that's what he's relying on. That's what the district court is relying on, and it's just not when you look at cases that there's hard to distinguish the cases that we cited from the facts of this case, but to your... Are you telling me there is not case law support for the district judge's determination on this there is just as rational case law on the other side of the issue, and that's what we submitted on our briefing, but with the very little time left, I'd like to address your initial question about the 3553 analysis. Now, what made it utterly irrational, Judge, and I'll hammer on this point just with the time that I have left. The judge found that Mr. Turnipsey's victim of I understand your point. He found that his continued involvement in street violence for years afterward was aggravated under those circumstances. What's irrational about that? Your Honor, it's... I see that I'm running out of time. I'd like to answer the judge's question. Thank you, Judge. When you look at the factors that the judge weighed, it wasn't primarily and for years to come, but he harped on the fact that because he was a shooting victim at the age of 14, that he should have known better, and when you look at the Supreme Court instruction in Penny v. Linen, 492 U.S. 319, it says that a bad background can be a mitigating circumstance, and there was an export report conducted in this case that not only concluded that his childhood was among the top four worst in the country, but that it stemmed directly from that socially toxic environment, that this offense stemmed directly... The judge said that he took that into account and took two years off of the... treated that as mitigating and took two years off what he had planned to give going into the hearing, right? Your Honor, even two years off of it is a substantial upward variance that is not supported by the 3553 factors. Thank you. Thank you, Judge. All right, thank you very much, Mr. Belauden. Ms. Kostanek. May it please the Court and good morning. The District Court imposed a reasonable sentence that balanced aggravating and mitigating factors, and it properly took into account that balance in reaching a sentence of 10 years imprisonment. The defense's argument shifts quite a bit from their opening brief to their reply to focus on mitigation that the defense... I'm sorry, that the District Court purportedly did not take into account. In addition to being factually incorrect because the District Court explicitly considered that mitigation, that new argument is waived. The defense specifically was asked at sentencing whether there were any primary arguments in mitigation that it failed to address, and the defense attorney replied, no, Your Honor. That's at page 137 of the sentencing transcript. The District Court also did address these arguments in mitigation, and it reached a reasonable conclusion with respect to the defendant being a victim of gun violence. In full, what the defendant... It does come across rather offensively, though, that because you were a victim of gun violence, I'm going to give you a stiffer sentence. Usually, you would think being a victim of gun violence would make you unable to think clearly about these things, not to mention the young age at which this happened, so the lack of maturity involved. I'm not sure that this sentence turns or falls on that, but I found it a somewhat surprising statement. I agree that the sentence certainly doesn't rise or fall on this point, so that's an important thing to keep in mind, but I also think that the statements need to be considered in context. So the District Court, in the context of accounting for mitigating circumstances, said in full on this point, you were shot at the age of 14. You've seen a number of people shot. Your being shot is not your fault, but you ought to know, having been shot yourself, how dangerous it is to go shooting guns, and I find that to be an aggravating circumstance. You saw firsthand the carnage that happens in your neighborhood when people shoot up people, and you participated in it. That's not an abuse of discretion. It is logical that somebody who is a victim of violence understands the impact of it and should not desire to inflict it on somebody else, but as Your Honor noted, this certainly was not dispositive in any way to the sentence. The District Court also considered many other 3553A factors, including the seriousness of the shooting that involved George Davis, as well as the defendant's many, many social media posts that reflected him unlawfully in possession of weapons, including driving around in the middle of the night with real firearms unlawfully. Ms. Kistanik, I know you're on your way there, but could we shift to minor role? I want to consider whether the pool size matters when the District Court is evaluating culpability vis-a-vis other co-conspirators. So if, as here, the District Court is looking at Mr. Turnipseed's culpability judged against his two co-defendants who are co-conspirators, who, as the District Court concluded, were simple drug dealers, Mr. Turnipseed, of course, looks like he has a greater role. If the pool size is, as Mr. Bulletin suggests, the greater swath of people involved in the gang, and not just in a time period, not just the 30 years the gang has been in operation, but all the people who are four-corner hustlers all across the West Side, and there are these different categories of people, even potentially beyond the three that the District Court identify, and the District Court has some evidence from the case about some of these other folks involved, does that make a difference? If judged against the other, there are other people who are most certainly higher on the totem pole in this gang than Mr. Turnipseed, and not just looking at these two co-defendants who are co-conspirators, does it then matter where the District Court ends up on this minor role question? So, the guideline reduction requires the defendant to prove, he bears the burden of this, to establish that he is substantially less culpable than the average co-conspirator, so that's comment 3A. I don't think that that's limited to the defendants who necessarily have been sentenced at that moment. The court is to look at the conspiracy, which here involved a number of other people, and the District Court took this issue into account, so it made, as Judge Wood noted, specific factual findings as to the hierarchy of this conspiracy, that it included leaders, it included shooters and murderers, and it included simple street dealers. Can the court make specific factual findings about these categories, but we certainly don't have anything here about numerosity, what those categories, how many people might be in them, and then comparing that to Mr. Turnipseed? That is certainly not part of this sentencing transcript. What we do know is that Judge Durkan also oversaw a number of other defendants' cases as part of this charged case, including hearing testimony in the course of Divine's sentencing that the government discusses in its brief. But wasn't there a stipulation that the Divine transcript could be used for Mr. Turnipseed? I think there was. I'm sorry, Your Honor. Wasn't there a stipulation that the Divine transcript could be used, that it was okay for the court to rely on that in sentencing Mr. Yes, Your Honor. The parties agreed at Turnipseed's sentencing that Divine's sentencing transcript could be treated essentially as a proper, like an uncross-examined law enforcement report, you know, and agreed that the court could consider it under those restraints, and that the court agreed to that as well. So, I mean, we're talking about having quite a mass of information, and you're right. But, you know, let me interrupt you and say, you know, I understand what my colleague is concerned about, and it's like the government's blowing hot and cold on this. You begin your brief by saying from approximately the 1990s to approximately 2017, Mr. Turnipseed was a member of this gang, which would imply a very large pool, both temporally and people. In the, so in the 1990s, mid-1990s, he was three years old. So, I mean, is the government saying that a three-year-old joined the gang, or a five-year-old joined the gang? It seems crazy. You know, so I think there's, you know, there's an overreach there, and maybe an underreach in terms of looking carefully to see, you know, who is the average member of the gang? How many people are there? Are there 100 people in the gang or 500 people? You know, how many of them are simple street dealers? How many of them do other things? We don't know those facts, do we? So, addressing Your Honor's first point first regarding the brief, if the brief says that with regards to Turnipseed's role, I apologize. You're right. He was, he was a child in the early 1990s. I'm looking at the page of the brief. Yes, the evidence reflects, and his own admissions reflect that he joined the gang at about age 17, and he was a part of the gang and committed a number of overt acts on behalf of the gang or acts of violence and drug dealing between 2010 or so and 2017. So, yes, more limited in duration than the enterprise as a whole, not so limited in duration that it makes him substantially less culpable. And I'd just like to focus Your Honor's attention on the actual fact findings that the court made, which are important. So, the court, you know, specifically found, in addition to discussing this hierarchy issue, that having, quote, having a person armed and ready to kill to protect drug territory is a definition of a person essential to the operation of the gang. And the court specifically considered the defendant's role in that regard, in the context of the leadership of the gang that LaVar Spann, as the district court noted, has limited mobility. He, quote, needed people to go out and do his bidding of selling drugs and shooting people. And the district court reasonably found from these facts that this defendant's critical role in acting as a person who sold drugs and was willing to shoot on behalf of the gang could not be somebody who had a substantially less culpable role in the conspiracy than other co-conspirators. You know, I just don't know if the Four Corner Hustlers had a person like that every three blocks who was supposed to. Your Honor, I don't think that that matters. What matters is there are people in the conspiracy, as the district court found, who had substantially, you know, more limited roles according to the record in front of it. It cites the examples of co-defendants who the evidence, as presented to the court, reflected that they were involved in narcotics dealings. And the defendant was not substantially less culpable than them. He was more culpable than them because he also engaged in violence. If I may just turn briefly to the attempted murder guideline, the district court did not clearly err in finding that the defendant acted with malice aforethought. The defendant, by his admissions and the plea agreement, got into an argument with Davis. It was an argument over drug territory. He instructed Davis he couldn't shoot, sell drugs there. And then by his admission, he shot at Davis. And the forensics indicate that he didn't shoot just once or twice or three times. He fired seven bullets in addition to the bullets being fired from other guns, which reflects that he was acting with malice aforethought. And for all these reasons, the government would ask that this court affirm the defendant's sentence. Thank you. Anything further, Mr. Belotin? Unmute. Are you muted? I don't think that I'm muted. Can you hear me? Now I can. Yeah, sorry. Okay. I would just briefly state that the unreasonableness of the sentence turns on whether the district court overemphasized 3553 factors. And that relates to the Rep King case. And in this circumstance, I do believe that the record shows an overemphasis on 3553 factors, namely that the judge issued a sentence 50 months longer than the mid-range of the guideline calculation. And for those reasons and the reasons mentioned in our brief, we would respectfully be asking your honors to reverse the district court sentence. Thank you. All right. Thank you very much. The court will take this case under advisement and